RONALD O. KAYE, SBN 145051
Email: rok@kmbllaw.com
LINDSAY BATTLES, SBN 262862
Email: lbattles@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Tel: (626) 844-7660
Fax: (626) 844-7670

Attorneys for Plaintiff s
MARIA LOBERG
ERICA LOBERG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LOBERG AND ERICA LOBERG, INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO THE ESTATE OF ERIC LOBERG,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COUNTY OF LOS ANGELES, SHERIFF LEE BACA, INTERIM SHERIFF JOHN SCOTT, DR. MARVIN SOUTHARD, DR. STEPHEN SHEA, DR. PHUONG TRUONG, AND DOES 1-10, INCLUSIVE,<br><br>    Defendants. | CASE NO: CV<br><br>**COMPLAINT FOR DAMAGES:**<br>**(1) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, WRONGFUL DEATH;**<br>**(2) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, *MONELL* VIOLATIONS.**<br>**(3) DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, SUPERVISORY LIABILITY;**<br>**(4) NEGLIGENCE;**<br>**(5) VIOLATION OF GOVERNMENT CODE §845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE**<br>**(6) VIOLATION OF THE ADA, 42 U.S.C. § 12101, and CALIFORNIA UNRUH ACT, CIVIL CODE §51**<br>**DEMAND FOR JURY TRIAL** |

# I.  **JURISDICTION AND VENUE**

1.     This action is brought by Plaintiffs MARIA LOBERG and ERICA LOBERG, pursuant to 42 U.S.C. §1983.

2.     This Court has jurisdiction under 28 U.S.C. §1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983, and under 28 U.S.C. §1331.

3.     The acts and omissions complained of commenced on November 18, 2014 and continued until November 26, 2014, within the Central District of California. Therefore, venue lies in this District pursuant to 28 U.S.C. §1391.

4.     Plaintiffs timely filed an administrative claim with the County of Los Angeles pursuant to Cal. Gov't Code §910.  The claim was denied on June 18, 2015. The County of Los Angeles and all related defendants extended the deadline for the date to file a lawsuit on this matter until August 18, 2016.

# II.  **PARTIES**

5.     Plaintiff MARIA LOBERG is the daughter, successor in interest, and an heir at law of Eric Loberg, the deceased. Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. She brings this claim for herself personally, as Eric Loberg's successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure  §§377.30 and 377.60 .

6.     Plaintiff ERICA LOBERG is the daughter, successor in interest and an heir at law of Eric Loberg, the deceased. Plaintiff is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged. She brings this claim for herself personally, as Eric Loberg's successor in interest and heir, as the personal representative of the estate and, as applicable, pursuant to California Code of Civil Procedure §§377.30 and 377.60 .

7.     Defendant COUNTY OF LOS ANGELES is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of

California. The Los Angeles County Sheriff's Department, the Los Angeles County Department of Mental Health, and the Los Angeles County Medical Services Bureau are, and at all times herein alleged were, agencies of the County of Los Angeles.

8.     Defendant SHERIFF LEE BACA was, until January 31, 2014, the Sheriff for Los Angeles County and in charge of Los Angeles County Jail, including Twin Towers Correctional Facility ("TTCF"), where Eric Loberg resided at the time of his death.  SHERIFF BACA was Sheriff of Los Angeles County since 1998 until the end of January of 2014.  By California law, the Sheriff is answerable for the safekeeping of inmates in his custody.  Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006.  SHERIFF BACA was responsible for the management and control of all Los Angeles County Jails, was responsible for the administration of TTCF; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the TTCF, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at TTCF.  He was responsible for the care, custody and control of all inmates housed in TTCF SHERIFF BACA was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at TTCF. Pursuant to California law and his duties as the Sheriff of Los Angeles County, SHERIFF BACA is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others.  SHERIFF BACA's affirmative conduct involves his knowing failure to

ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Eric Loberg.

9.     Defendant INTERIM SHERIFF JOHN SCOTT was, from February 1, 2014 to December 1, 2014, the Sheriff for Los Angeles County and in charge of Los Angeles County Jail, including TTCF, where Eric Loberg resided at the time of his death.  By California law, the Sheriff is answerable for the safekeeping of inmates in his custody.  Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006. INTERIM SHERIFF SCOTT was responsible for the management and control of all Los Angeles County Jails, was responsible for the administration of TTCF; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the TTCF, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at TTCF.  He was responsible for the care, custody and control of all inmates housed in TTCF.  INTERIM SHERIFF SCOTT was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at TTCF.  Pursuant to California law and his duties as the Sheriff of Los Angeles County, INTERIM SHERIFF SCOTT is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others.  INTERIM SHERIFF SCOTT's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a

series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Eric Loberg.

10.   Defendant DR. MARVIN SOUTHARD, was at all times mentioned herein the Director of  Los Angeles County Department of Mental Health and in charge of Jail Mental Health operations in Los Angeles County, where Eric Loberg resided at the time of his death.  DR. SOUTHARD was responsible for the management and administration of mental health services of the TTCF; for the selection, promotion, supervision, training, discipline and retention of mental health workers working within the TTCF, including counselors, nurses, doctors, physician assistants, mental health staff and supervisors; and for the implementation of mental health policies and procedures at TTCF.  DR. SOUTHARD was regularly provided with reports concerning the treatment of mentally ill inmates, jail suicides, and other violations involving the mental health care and treatment of inmates at TTCF.  Pursuant to California law and his duties as the Director of the Department of Mental Health of Los Angeles County, DR. SOUTHARD is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others.  DR. SOUTHARD's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Eric Loberg.

11.   Defendant DR. STEPHEN SHEA was at all times mentioned herein the Deputy Director of the Los Angeles County Department of Mental Health and in charge of the Adult Justice Unit.  DR. SHEA was responsible for the management and administration of mental health services in the Los Angeles County jail

4

system, including the TTCF, the facility where Eric Loberg resided at the time of his death; for the selection, promotion, supervision, training, discipline and retention of mental health workers working within the TTCF, including counselors, nurses, doctors, physician assistants, mental health staff and supervisors; and for the implementation of mental health policies and procedures at TTCF.  DR. SHEA was regularly provided with reports concerning the treatment of mentally ill inmates, jail suicides, and other violations involving the mental health care and treatment of inmates in the Los Angeles County jail system.  Pursuant to California law and his duties as the Deputy Director of the Department of Mental Health of Los Angeles County, DR. SHEA is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others.  DR. SHEA's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Eric Loberg.

12.   Defendant DR. PHUONG TRUONG, was at all times mentioned herein a treating psychiatrist for Eric Loberg in the Los Angeles County Jails and responsible for providing competent mental health and medical care, treatment and follow-up care to Mr. Loberg. Defendant DR. PHUONG TRUONG is sued in his individual capacity.

13.   Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 10, inclusive, were employees of the County of Los Angeles, including but not limited to deputies and civilian staff of the Los Angeles County Sheriff's Department, employees of the Department of Mental Health, and employees of the Medical Services Bureau, and were at all relevant times acting in the course and scope of their employment and agency.  Each

Defendant is the agent of the other.  Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

## III.  GENERAL ALLEGATIONS

14.   Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

15.   Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this complaint.

16.   The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

## IV.  FACTUAL ALLEGATIONS

### A.   Background

17.   In November 2014, Eric Loberg ("Mr. Loberg") was 48 years old. He was a high school graduate who had worked in sales. He was married on two occasions, and he had two daughters, Plaintiffs Maria Loberg (21) and Erica Loberg (19) from his first marriage. Mr. Loberg played a significant role in raising both girls. Even after he began demonstrating signs of severe mental illness, he remained emotionally connected to his daughters, Maria and Erica.

18.   Mr. Loberg began experiencing mental health issues in his early / mid-30's and was eventually diagnosed with schizophrenia and/ schizo-affective disorder. In September 2013, Mr. Loberg was arrested on burglary charges. He displayed signs of acute psychosis during incarceration and was assigned to

psychiatric, High Observation Housing ("HOH") in TTCF. On September 27, 2013, he was released to the care of Olive View Medical Center ("Olive View"), on an involuntary psychiatric hold ("5150 hold"), based on a determination that he was "gravely disabled" within the meaning of the Lanterman-Petris-Short Act (LPS). *See* Cal. Welfare & Inst. Code §5000 et seq. Medical records reflect that the 5150 hold was placed due to paranoid symptoms, confusion and inability to articulate a viable plan for self-care (food, clothing and shelter). Mr. Loberg was transferred from Olive View to Kedren Community Health Center, a locked psychiatric hospital, where he was involuntarily admitted.

19.   On October 2, 2013, a certification reviewing hearing was held, during which Mr. Loberg's involuntary psychiatric hold was continued for 14 days following a hearing in which he was found to be "gravely disabled." On October 17, 2013, Mr. Loberg was certified for an additional 30 days involuntary treatment and remained involuntarily committed despite his requested judicial review via a petition for writ of habeas corpus. In November 2013, Mr. Loberg was placed in a temporary conservatorship based on a determination that he remained "gravely disabled."

20.   On January 10, 2014, the Los Angeles County Public Guardian ("LAPG") was appointed as the conservator of Mr. Loberg's person and estate. LAPG authorized Kedren to continue to detain and treat Mr. Loberg.  Mr. Loberg filed two petitions for re-hearing with concerning his conservatorship and involuntary commitment. The first petition was heard on March 11, 2014 and the second on September 23, 2014. On information and belief, the Los Angeles Superior Court denied both petitions based on a determination that he remained "gravely disabled" and unable to care for himself.

21.   On October 29, 2014, Mr. Loberg was transferred from Kedren to Olive Vista Behavioral Health Center ("Olive Vista") in Pomona, California, for

long-term, in-patient treatment. On November 6, 2014, he briefly escaped the hospital. Olive Vista apprehended him several blocks away and he returned.

22.   On November 15, 2014, Mr. Loberg again escaped from Olive Vista and could not be located for two days. The Pomona Police Department located him on November 17. Because his bed was no longer available, he could not be returned to Olive Vista. LAPG advised Olive Vista that Mr. Loberg would be transferred to a different locked, psychiatric hospital. Pomona Police Department, however, did not transfer Mr. Loberg to another mental health hospital, but instead, transferred him to the custody of the Los Angeles Sheriff's Department ("LASD") on charges of probation violation for failing to contact his probation officer when he left the custody of Olive Vista.

**B.   Eric Loberg's November 2014 Incarceration & Death**

23.   On November 18, 2014, Mr. Loberg was booked into the Los Angeles County Jail Inmate Reception Center ("IRC"). On information and belief, arresting officers were aware that Mr. Loberg had *escaped* from Olive Vista, where he had been involuntarily committed, and was conserved through the LAPG because he had been found "gravely disabled." On information and belief, arresting officers communicated this information to the LASD verbally and in writing via Mr. Loberg's arrest form and/or other documents.

24.   During booking at IRC, LASD administered a "Medical/Mental Health Intake Screening" survey, which included a suicide risk assessment. Mr. Loberg falsely advised LASD that he was *not* taking psychiatric medication, had no mental health problems, had never been hospitalized in a psychiatric facility, and had never received any mental health services, including no mental health services in jail. This information was clearly false, as reflected by the LASD electronic jail records and information relayed by arresting officers of the Pomona Police Department. The LASD's electronic records reflected that Mr. Loberg had been assigned to High Observation psychiatric housing during his last incarceration

8

(September 2013) and had been released to the custody of a psychiatric hospital pursuant to a 5150 psychiatric hold. Given the false and unreliable nature of Mr. Loberg's responses during the intake screening process, LASD knew or should have known that he lacked the ability to provide reliable information necessary to assess whether he was at risk for suicide or self-injury.

25.   The LASD referred Mr. Loberg for evaluation by mental health personnel. The referral indicated that Mr. Loberg had a history of mental health problems, was on psychiatric medication, had exhibited unpredictable and impatient behavior, and had previously been assigned to High Observation psychiatric housing at TTCF. The referral did not state that Mr. Loberg was conserved based on a determination that he was "gravely disabled" within the meaning of LPS criteria.

26.   On the morning of November 18, 2014, Melody Stewart of the LAPG advised a DMH social worker that Mr. Loberg was a conservatee of the LAPG and requested that he be placed in mental health housing. This communication put Defendant COUNTY on notice that Mr. Loberg had been deemed "gravely disabled" pursuant to LPS criteria and that his mental illness required inpatient, psychiatric care. Though DMH personnel knew that Mr. Loberg was conserved, and had been found to meet LPS criteria, they did not request a bed in the Forensic Inpatient Program ("FIP"). Pursuant to DMH policies, FIP is indicated for mentally ill inmates who either present an acute danger to self or others, or are "gravely disabled", due to mental illness that requires in-patient care.

27.   On the afternoon of November 18th, Mr. Loberg was evaluated by R.N. Daniel Tejada. R.N. Tejada noted that Mr. Loberg was chained to the bench following an outburst with a nurse, and could be unpredictable and impatient. During the evaluation, Mr. Loberg again falsely denied suffering any significant mental health issues, denied a history of mental illness and indicated that he was not receiving psychiatric care in the community. LASD and DMH personnel knew

this information to be false based on the fact that Mr. Loberg was conserved through the LAPG, and based on electronic jail medical records reflecting that, in 2013, Mr. Loberg was assigned to HOH and released to a psychiatric hospital pursuant to a 5150 hold. Because Mr. Loberg again provided false and unreliable information concerning his mental health history and status, LASD knew or should have known that he lacked the ability to provide reliable information necessary to assess his risk for suicide or self-injury.

28. On the morning of November 19, 2014, R.N. William Bowers conducted an Initial Mental Health Evaluation. During the evaluation, Mr. Loberg advised that he was conserved through the LAPG's Office and that his mood was "not good." R.N. Bowers noted that, after Mr. Loberg's most recent incarceration (2013), he had been released from HOH to the custody of a psychiatric hospital, on a 5150 hold, on the basis that he had been found "gravely disabled." Despite knowledge that Mr. Loberg was currently conserved, and had been found to be "gravely disabled" within LPS criteria, R.N. Bowers did not request a bed in FIP. On information and belief, the failure to request a bed for Mr. Loberg in FIP violated the LASD and DMH regulations.

29. R.N. Bowers also concluded that Mr. Loberg was not at risk for suicide or self-injury despite the fact that he continued to provide false information concerning his mental health status and history, indicating that he could not be relied upon to provide accurate information necessary to assess his risk for suicide or self-injury. During the evaluation, Mr. Loberg advised Bowers, falsely, that he had been *released* from Olive Vista Behavioral Health Center, after completing two weeks of in-patient therapy, as ordered by the Public Guardian. ("I was sent to Vista for 2 weeks by the Public Guardian…got released last Saturday."). DMH knew or should have known that Mr. Loberg's statement about having been released from Olive Vista was false, based on information provided by, or available through, arresting officers and/or the LAPG.

30.   Later the morning of November 19, DMH psychiatrist Phuong Truong examined Mr. Loberg. Dr. Truong's assessment included a review of electronic medical records indicating that Mr. Loberg had a history of psychosis and had previously been diagnosed with schizoaffective disorder. Medical records also indicated that, during previous incarcerations, he demonstrated unpredictable behavior, poor medication compliance, and lacked insight into his mental health issues.

31.   Based on an examination and review of medical records, Dr. Truong prescribed anti-psychotic medication and assigned Mr. Loberg to HOH for "further observation" of his mental health status. Though Dr. Troung knew that Mr. Loberg was currently conserved, and had been deemed "gravely disabled" by a court, he did not order that Mr. Loberg be admitted to FIP nor does his assessment address whether Mr. Loberg would be more appropriately housed in FIP than in HOH.

32.   On November 19, Melody Stewart of the LAPG contacted DMH to advise that Mr. Loberg was a "high AWOL risk" and due to his "gravely disabled" status and inability to care for himself, requested that he be considered for a 5150, mental health hold should he be released after hours. On information and belief, during this phone call, Ms. Stewart informed mental health staff that Mr. Loberg had *escaped* from Olive Vista, where he had been involuntarily committed. Mr. Loberg's escape or "elopement" from Olive Vista provided unmistakable notice that Mr. Loberg required and was receiving in-patient psychiatric treatment immediately before his arrest and continued to require in-patient psychiatric treatment.  Despite this critical information, DMH did not assess whether Mr. Loberg could be safely housed outside of FIP.

33.   Mr. Loberg's elopement from Olive Vista also constituted a significant red flag for mental health personnel as it indicated that he was not tolerating confinement well, had been desperate to escape being restricted to a locked environment, and was at risk for further decompensation during incarceration. In

11

light of his fragile psychiatric condition and desperation to escape confinement, it was apparent and foreseeable that incarceration in a custodial environment such as TTCF – an even more extreme restriction of liberty – could result in rapid deterioration of his psychiatric condition, including overwhelming feelings of hopelessness and despair. Mr. Loberg's escape also underscored indications of his poor judgment, impulsivity and highly unpredictable behavior. Despite this information, DMH did not request placement in FIP to ensure that Mr. Loberg's condition could be appropriately monitored and treated, nor did DMH assess whether Mr. Loberg could be safely housed outside of FIP.

34.   On November 20, 2014, Mr. Loberg was assigned to T-262, a two-tiered, HOH unit. Tiered HOH housing, unlike FIP housing, was not designed for inpatient psychiatric treatment or for housing inmates with profound psychiatric illness. HOH housing presented suicide hazards, including jumping hazards, that would not have been present in FIP housing, and which are inconsistent with minimum safety standards for facilities in which persons requiring in-patient psychiatric treatment are to be held. At the time of Mr. Loberg's incarceration, T-262's upper tier had no protective barriers, suicide prevention nets or other measures to prevent inmates from jumping off the second floor tier of the housing unit.

35.   On information and belief, Defendants did not specifically assess whether Mr. Loberg could be safely and appropriately housed on the upper floor tier of a two-tier unit. Defendants were fully on notice of the need for such assessment given Mr. Loberg's status as a "gravely disabled" conservatee requiring close observation, his pattern of unpredictable and desperate behavior, and circumstances indicating a high risk for psychiatric decompensation in custody (i.e. escape from a locked psychiatric hospital immediately prior to arrest).

36.   On information and belief, Defendants did not conduct ongoing monitoring and assessment to ensure that Mr. Loberg did not require transfer to

FIP and that he could continue to be safely housed in HOH. Defendants fully on notice of the need for such close, ongoing monitoring and assessment given Mr. Loberg's status as a gravely disabled conservatee requiring close observation, his pattern of unpredictable and desperate behavior, his repeated false representations of his mental health status, and circumstances indicating a high risk for psychiatric decompensation in custody (i.e. escape from locked psychiatric hospital immediately preceding arrest and incarceration). Indeed, on information and belief, after November 20, 2014, Mr. Loberg received no mental health evaluation or treatment, aside from prescribed medication. Electronic medical records reflect no further mental health evaluation, suicide risk/behavioral assessment, or therapeutic activities.

37.   While Mr. Loberg was in its custody, Defendants failed to take well-established, necessary precautions to prevent unsupervised access to the second-tier floor. Defendants fully on notice for the need to prevent unsupervised access to the second tier given Mr. Loberg's history of serious mental illness, status as a "gravely disabled" conservatee requiring close observation,  pattern of unpredictable and desperate behavior, and circumstances indicating a high risk for psychiatric decompensation in custody. On information and belief, Defendants permitted Mr. Loberg to walk unrestrained and/or unescorted along the second tier, in violation of LASD policies prohibiting HOH inmates from having unsupervised access to the second tier and requiring that High Observation inmates be escorted in handcuffs whenever they are transported outside of their cells, and in particular, along the second-tier.

38.   On information and belief, DMH and custodial personnel failed to take well-established, suicide and self-harm prevention measures, the need for which they were on notice of given behavior indicating a clear decompensation of Mr. Loberg's mental health status during his incarceration at TTCF, and/or clear

13

indications of increased risk for self-injury or suicide, and his status as "gravely disabled."

39.   On November 26, 2014, Mr. Loberg jumped head first from the second tier of his housing unit in an apparent suicide attempt. On information and belief, there was woefully inadequate supervision by Defendants, in direct violation of Mr. Loberg's HOH housing status. As a result of this fall, Mr. Loberg suffered significant injuries and was transferred to the University of Southern California Medical Center where he died on December 1, 2014.

**C.   THE COUNTY OF LOS ANGELES COUNTY SHERIFF, DEPARTMENT OF MENTAL HEALTH, AND MEDICAL SERVICES BUREAU'S POLICIES, CUSTOMS AND PRACTICES VIOLATING THE RIGHTS OF PERSONS WITH MENTAL ILLNESS, VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY FAILING TO PROVIDE ADEQUATE MENTAL HEALTH SERVICES AND ADEQUATE PROTECTION TO ERIC LOBERG .**

40.   On September 5, 1997, the United States Department of Justice ("DOJ") advised Ms. Joanne Sturges, the Los Angeles County Executive, the results of its June 6, 1996 investigation into the mental health conditions of the Los Angeles County Jails pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§1997 *et seq*.  The DOJ concluded that "unconstitutional conditions exist at the Los Angeles County Jail, including a deliberate indifference to inmates serious mental health needs."  After itemizing multiple unconstitutional conditions pertaining to the treatment of inmates with mental health conditions, the DOJ made Recommended Remedial Measures which specifically focused on suicide prevention, including but not limited to: "recognizing and responding to indications of suicidal thoughts" and "proper suicide observation."

41.     On December 19, 2002, the Los Angeles County and the United States entered into a Memorandum of Agreement Regarding Mental Health Services at the Los Angeles County Jail ("MOA").  SHERIFF BACA was one of the signers of the MOA, which was entered into to avoid potential litigation concerning the mental health services at the jail.  Among the provisions in the agreement is the acknowledgment that:

a.      the "Sheriff of Los Angeles County, and the Los Angeles County Sheriff's Department of Mental health are responsible for overseeing and/or providing mental health services to the inmates at the Jail;"

b.      the "Mental health staff shall make weekly rounds in locked down non-mental health housing modules (e.g. administrative segregation, disciplinary segregation) at the Jail to identify inmates who may have been missed during screening or who have decompensated while in the Jail;"

c.      "the County shall provide adequate mental health treatment to all inmates determined to be mentally ill;"

d.      "the County shall ensure adequate therapy and counseling for all mentally ill inmates who need such care.  This includes adequate space for treatment, adequate staff to provide treatment, and adequate therapeutic programming;"

e.      "the County shall ensure that inmates observed to be potentially suicidal receive appropriate crisis intervention, (including placement in a safe setting and evaluations in a timely manner), by qualified mental

15

health professional to determine whether and what level of suicide observation is required;"

f.    "the County shall provide sufficient mental health staffing to ensure timely access to adequate mental health treatment and meet the obligations and provide the services listed in this Agreement;"

g.    "the County shall implement mandatory orientation and continuing competency based in-service training for correctional staff in the identification and custodial care of mentally ill inmates, including, but not limited to: (b) recognizing and responding to indications of suicidal thoughts, (c) proper suicide observation, and (f) response to mental health crises, including suicide intervention . . . the County shall provide annual refresher training;" and,

h.    "Staff shall not be permitted to physically, verbally or mentally abuse inmates with mental illness."

42.   On September 5, 2013 – *approximately one year before Eric Loberg's incarceration and death by suicide* – the Department of Justice gave notice to William T. Fujioka, Chief Executive Officer of the County of Los Angeles, and SHERIFF BACA, that the DOJ was going to complete its assessment of the Los Angeles County Jail as to whether the Jail has complied with the 2002 MOA regarding the delivery of mental health services. Specifically, the DOJ referenced the finding of the MOA reflecting allegations of inadequate suicide prevention for prisoners. In addition, the DOJ correspondence emphasized the "recent increase in suicides."

43.   On June 4, 2014, *less than five months before Eric Loberg's death,* the DOJ sent to County Counsel a compliance letter on the 2002 MOA about treatment

of the mentally ill.  After performing an extensive investigation – reflecting four completed suicides in 2012, ten completed suicides in 2013, and one completed suicide in January, 2014 – the Department of Justice  found: "Based on our review, we conclude that the County violates the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide adequate mental health services and protect prisoners from serious harm and risk of harm at the Jails due to inadequate suicide prevention practices.  Consistent with the practice of our long-standing investigation of the Jails pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997, we write to update our conclusions of September 5, 1997 regarding mental health  treatment and suicide prevention at the Jails and to discuss the minimum remedial steps necessary to address the identified deficiencies."

44.   The Department of Justice concluded that "Los Angeles County, including the Sheriff's Department and the Department of Mental Health, violates prisoners' constitutional right to adequate suicide prevention practices, which is required as part of the Jails' legal obligation to meet the serious mental health care needs of all prisoners. These deficiencies pose a substantial risk of serious harm to prisoners in violation of the Fourteenth Amendment's due process protections for pretrial detainees, as well as the Eighth Amendment's protections for those convicted of a criminal offense."

45.   The June 4, 2014 DOJ letter articulated numerous systemic failures of Defendant COUNTY to maintain constitutionally adequate mental health care which directly applied to the unconstitutional treatment of Eric Loberg and his untimely death. These conditions, include, but are not limited to:

    a. There was inadequate mental health care to prevent prisoners from becoming suicidal, to identify suicidal prisoners, or to prevent prisoners from going into crisis.

17

b. The Los Angeles County Jails do not provide appropriate custodial supervision for prisoners, resulting in repeated lapses in the Jails' safety checks, creating a serious risk of harm to prisoners from suicidal behavior;

c. The general lack of adequate supervision is especially troubling given the hazardous conditions, including known suicide risks that exist in nearly every housing unit in the jails. Prisoners with mental illness are housed in conditions that present, rather than prevent, a risk of suicide. Deputies do not consistently perform timely, thorough safety checks.

d. Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health had inadequate intake screening and identification of individuals with mental illness and are at risk for suicide, ignoring significant mental health history;

e. Incomplete information collection and communication in intake assessments and evaluations: Although LASD conducts screenings to identify prisoners who may be at risk for suicide or self-harm, screenings are often not filled out completely or adequately incorporated into the prisoner's electronic medical record. As a result, intake screening is insufficient to identify and protect individuals at risk for suicide;

f. Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health often operate in "silos" when addressing suicide incidents and risks, resulting in a lack of communication, or miscommunication between representatives of these entities, causing a critical breakdown in the custody and care of the prisoners in the Jails;

18

g.  Insufficient mechanisms to ensure that any relevant information regarding a prisoner's medical or mental health status or history (for example, from the arrest report) is communicated to medical and mental health staff for inclusion in the prisoner's electronic medical record;

h.  Despite the onslaught of suicide attempts in the years preceding Eric Loberg's death, there was a persistent failure of the Jails' command staff to critically review the policies, staffing and custody practices to the suicides and the suicide attempts that were occurring;

i.  The prevalence of hazardous conditions within the Jails which promote the risk of suicide;

j.  The practice of placing potentially suicidal inmates into single cells by custody staff without consulting prisoner classification or mental health staff;

46.   But in addition to listing the persistent flaws in the suicide prevention practices and the treatment of mentally ill inmates in Los Angeles jails, in illustrating the severe failure of Defendant COUNTY to comply with the 2002 MOA, and its failure to meet the standard of care required by the Eighth and the Fourteenth Amendments of the United States Constitution, the DOJ highlighted specific inmates whose suicides occurred while in custody as examples of Defendant COUNTY's substandard, unconstitutional treatment of inmates with mental health illness and who were at risk of suicide. The inmates referenced as examples in the June 4, 2014 DOJ letter demonstrated how Defendant COUNTY – specifically its Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health – all contributed to the prevalence of inmate suicides in the Los Angeles County Jails facilities from 2012 through 2014.

19

47.   Beyond these flagrant conditions which contributed to Eric Loberg's suicide, the June 4, 2014 DOJ letter also emphasized the failure of the COUNTY to critically review an inmate's suicide after it occurred, thereby ratifying the prior unconstitutional conduct and furthering the likelihood of similar misconduct in the future:

> The many errors in the critical incident reviews, errors of both omission and inaccurate recording, create suspicion with regard to their veracity. For example, the final critical incident review for the suicide of Dean is marked by errors in facts and appears to be the product of cutting and pasting from another suicide that occurred prior to Dean's death. Inconsistencies and errors in his age, his record of incarceration in the Jails, and in the dates of the critical incident review meetings make the entire review document questionable. Apparently none of these errors were noted by members of the review committee, as they remained in the critical incident review three months after Dean's death.

48.   The actions and inactions of the LASD, the Department of Mental Health and the Medical Services Bureau set forth in the preceding paragraphs were known or should have been known to the policy makers responsible for the Defendant COUNTY and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and / or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious.

49.   The actions and omissions of Defendant COUNTY and its Sheriff's Department, Department of Mental Health, and Medical Services Bureau set forth in the preceding three paragraphs were a motivating force behind the violations of Eric Loberg's constitutional rights as set forth in this complaint.

50.   On August 5, 2015, Defendant COUNTY and the United States Department of Justice entered a settlement agreement concerning the provision of mental health care at the Los Angeles County Jail. The Settlement Agreement was specifically intended to ensure measures to protect prisoners from conditions that "place them at unreasonable risk of harm from suicide, self-injurious behavior, or unlawful injury by others, in accordance with their constitutional rights."

51.   The settlement agreement required, *inter alia*, that the COUNTY and LASD commence a systemic review of all prisoner housing, beginning with FIP, HOH, Moderate Observation and single-person discipline cells, to identify and address suicide hazards, using a nationally-recognized audit tool for review. It further required that LASD *install protective barriers on the second floor tier of all High Observation Housing areas to prevent prisoners from jumping off of the second floor tier*, as Mr. Loberg did. The LASD was further required to develop a plan identifying any other areas of mental health housing where such protective barriers should be installed.

## V.   PARTICIPATION, STATE OF MIND AND DAMAGES

52.   All Defendants acted without authorization of law.

53.   Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

54.   As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

55.   Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiffs' rights.

56.   Each Defendant acted with a deliberate indifference to or, reckless disregard for, an accused's rights for adequate mental health care in a custodial facility.

57.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Mr. Loberg suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which LASD, Department of Mental Health and the Medical Services Bureau failed to provide appropriate psychiatric care and treatment for his urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering during the hours preceding his suicide on November 26, 2014.

58.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

59.   Due to the acts of the Defendants, Plaintiffs have suffered, and continue to suffer, and are likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, Plaintiffs will incur significant damages based on psychological and medical care.

60.   As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of their father, Eric Loberg, and the emotional impact on their family unit as a whole.

61.   The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each defendant other than Defendant COUNTY in an amount to be proven at the trial of this matter.

22

62.   By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5 and any other applicable provision of law.

## FIRST CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §1983
### DELIBERATE INDIFFERENCE TO
### SERIOUS MEDICAL NEEDS AND SAFETY
### (Against All Defendants and DOES 1-10, Except Defendant COUNTY)

63.   Plaintiffs reallege paragraphs 1 through 62, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

64.   Plaintiffs are informed and believe, and based on such information and belief, allege that Defendants acted with deliberate indifference for Eric Loberg's serious medical needs and safety, in that they failed to provide adequate psychiatric assessment, treatment and intervention; inappropriately assigned Mr. Loberg to HOH housing instead of FIP housing despite clear indications that he required more intensive treatment and supervision; inappropriately assigned him to two-tiered HOH housing despite clear indications that he could not be housed in an area with known suicide hazards (jumping hazards); ignored and/or failed to reasonably monitor, to provide security, and to prevent Eric Loberg from committing harm to himself while housed in tiered, HOH housing; failed to provide medically-indicated psychiatric care and assessment; and ignored his serious but treatable mental health condition. Due to Defendants' deliberate indifference to the serious nature and life threatening condition of Eric Loberg, and their failure to timely intervene to provide reasonable security, monitoring and safety, and psychiatric medical intervention necessary to prevent his efforts to harm himself, Eric Loberg

23

suffered preventable serious injury and harm by jumping from the second-tier on November 26, 2014.

65.   Eric Loberg was subjected to deprivation of rights by these Defendants and DOES 1 through 10, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges and immunities secured to Eric Loberg by the Fourteenth or Eighth Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

66.   Plaintiffs MARIA and ERICA LOBERG allege that these Defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love and society of their father, all to his damage in an amount to be proven at trial according to proof.

## SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. §1983
### (Against Defendant COUNTY) – *MONELL* VIOLATIONS

67.   Plaintiffs reallege paragraphs 1 through 66 as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

68.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants COUNTY OF LOS ANGELES, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Eric Loberg, engaged in the unconstitutional conduct and omissions as is specifically elaborated in ¶¶17-51 et seq., above.

69.   Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, Defendant COUNTY OF LOS ANGELES, Los Angeles

24

Sheriff's Department, and DMH, with deliberate indifference, and/or conscious or reckless disregard to the safety and constitutional rights of Eric Loberg, and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied the policies, practices and customs set forth in Section IV, C, above, including, but not limited to: failure to provide adequate mental health services; failure to mitigate or eliminate known environmental, suicide hazards prevalent throughout jail housing areas, including housing areas to which inmates with serious mental illness are assigned (including jumping hazards present in tiered HOH housing units); failure to provide appropriate custodial supervision of inmates with mental health conditions – despite known suicide hazards; failure to ensure that mental health housing and treatment spaces meet minimum safety design standards for facilities in which persons with serious mental illness are held; failure to ensure sufficient treatment space and staffing necessary to provide adequate mental health care; inadequate intake screening and assessment for housing placement; inadequate monitoring and assessment of inmates' mental health conditions; insufficient mechanisms to ensure communication of relevant information between custodial, medical and mental health staff; failure to ensure appropriate suicide intervention measures; and, failure to ensure adequate training of correctional staff in suicide prevention and responding to mental health care crises.

70.   Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of the Los Angeles County Jails to unconstitutionally inadequate treatment for inmates with mental health conditions; permit and promote unsafe conditions for inmates leading to a heightened risk of suicide; and cover-up incidents of unconstitutional behavior by members of its LASD custody staff, Medical Services Bureau and Department of Mental Health.

71.   At all times herein mentioned, the County of Los Angeles and its Sheriff's Department, the Medical Services Bureau, and the Department of Mental Health authorized and ratified the wrongful acts of the individual Defendants. The actions and inactions of the LASD including it custody staff, the Medical Services Bureau, and the Department of Mental Health set forth in ¶¶17-51, et seq. were known or should have been known to the policy makers responsible for Los Angeles COUNTY, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

72.   The actions of the LASD including it custody staff, the Medical Services Bureau, and the Department of Mental Health set forth herein were a motivating force behind the violations of Plaintiffs' and Eric Loberg's constitutional rights as set forth in this complaint.

73.   As a direct and proximate result of Defendant COUNTY OF LOS ANGELES' policies, practices, and customs, Plaintiffs sustained injury and damage as proved.

74.   As a result of Defendants', and each of their, violations of Plaintiffs' and Eric Loberg's constitutional rights as set forth herein, Plaintiffs were damaged as alleged above.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

26

## THIRD CLAIM FOR RELIEF

**DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE
MEASURES CAUSING CONSTITUTIONAL VIOLATIONS
(Against Supervisory Defendants and DOES 1-10 Except Defendant
COUNTY)**

75.   Plaintiffs reallege paragraphs 1 through 74, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

76.   Plaintiffs are informed and believe and thereon allege that Defendants BACA, SCOTT, SOUTHARD, SHEA, TRUONG and DOES 1-10 knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the Los Angeles County Jail to fail to provide reasonable security, monitoring and supervision of inmates such as Eric Loberg; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as Eric Loberg; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as Eric Loberg, were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' constitutional rights.

77.   Plaintiffs are informed and believe and thereon allege that prior to the incident alleged herein, Defendants BACA, SCOTT, SOUTHARD, SHEA, TRUONG and DOES 1-10, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

27

a. Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Los Angeles County with known mental disabilities;

b. Failure to provide adequate housing and properly classify inmates in the Los Angeles County Jails so that they would have access to and delivery of indicated mental health and medical care;

c. Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

d. Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

e. Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

78. Plaintiffs are further informed and believe and thereon allege that Defendants BACA, SCOTT, SOUTHARD, SHEA, TRUONG and DOES 1-10, knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 1-10 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of inappropriate

28

conduct, and as a result Eric Loberg was harmed in the manner threatened by the pattern or practice.

79.   At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

a.   To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

b.   To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

c.   To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

d.   To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

e.   To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f.   To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates

with mental health disabilities at Los Angeles County Jails;

g.   To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to persons with known dangerous propensities;

h.   To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i.   To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of Eric Loberg's and other inmate's constitutional rights;

j.   To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment; and

k.   Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

80.   As a legal result of the conduct of Defendant BACA and Does 1-10, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

/ / /

/ / /

/ / /

# FOURTH CLAIM FOR RELIEF

## NEGLIGENCE
### (Against All Defendants and DOES 1-10, Except Defendant COUNTY)

81.   Plaintiffs reallege paragraphs 1 through 80, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

82.   Defendants and DOES 1-10, had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment and/or emergency services to Eric Loberg for his mental health condition but breached their duty and were negligent in the performance of their duties and this negligence caused the death of Eric Loberg.

83.   Defendants and DOE supervisors 1-10, acting within the course and scope of their employment with the LASD, the Department of  Mental Health and the Medical Services Bureau had a duty to assure the competence of their employee/agents Defendants and DOES 1-10, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents.  This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as Eric Loberg.

84.   The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding Eric Loberg's condition and failed to prevent his suicide.

85.   As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Eric Loberg, he was injured due to a serious but treatable mental health condition and Plaintiffs have suffered the damages as alleged above.

86.   As a legal result of the aforesaid negligence and unskillfulness of Defendants, Eric Loberg's's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his suicide, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

### FIFTH CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA GOV'T CODE § 845.6**
**(Against All Defendants Except Defendant COUNTY)**

87.   Plaintiff realleges paragraphs 1 through 86, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

88.   By virtue of the foregoing, Defendants, including but not limited to representatives of the LASD, the Department of Mental Health the Medical Services Bureau knew or had reason to know that Eric Loberg needed intensive medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored, going forward from November 19, 2014; that he should have been prevented from unsupervised and unrestrained access to the second floor tier of a tiered housing unit; that on or before November 26, 2014 he needed immediate medical care and was not given such care. The failure to provide immediate medical care and mental health care, where his health and mental condition were deteriorating, proximately caused his suicide.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF AMERICANS WITH DISABILITIY ACT (ADA), TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794, AND CALIFORNA UNRUH ACT, CAL. CIVIL CODE §§51, et seq.
### (Against All Defendants and Defendant COUNTY)

89.   Plaintiffs reallege paragraphs 1 through 88, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

90.   Eric Loberg was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and Cal. Civ. Code §51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements of the County of Los Angeles' and Los Angeles Sheriff's Department's programs to provide mental/medical health care services for its inmate patients in the Los Angeles Sheriff's Department. Further, Sheriff BACA had signed an agreement with the U.S. Department of Justice to ensure that the mentally ill in his jails received indicated and required psychiatric care and treatment, that they would be protected from self-harm through suicide.

91.   Defendant Los Angeles COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code §51, seq., explicated by the regulations promulgated under each of these laws.

92.   Defendant Los Angeles County mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

33

93.   Under the ADA, Los Angeles County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities. . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

94.   Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).

95.   Los Angeles COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

96.   Defendant Los Angeles COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of … A department, agency, special purpose district, or other instrumentality of a State or of a local government.

97.   Defendant Los Angeles COUNTY and other Defendants violated the ADA and the RA and Cal. Civ. Code §51, et seq., and deprived Eric Loberg and Plaintiffs of their federally and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with Los Angeles COUNTY's jails; (b) failing to provide services or accommodate Eric Loberg with access to the programs and services of Los Angeles COUNTY'S designated mental health facilities within Los Angeles County Jails for persons who qualify for access and services under California and federal law; (c) failing to provide services or accommodate Eric Loberg as indicated and with appropriate classification, housing and monitoring for

34

a person in their sole and exclusive custody who they knew was mentally disabled; (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities; (e) failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as Eric Loberg; and (f) failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against Eric Loberg, under the ADA and RA.

98.   Eric Loberg was denied the benefits of the services, programs, and activities of Los Angeles COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and "gravely disabled," in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from self-harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was result in the violation of Plaintiffs' constitutional rights.

99.   As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Eric Loberg died and Plaintiffs have suffered, are now suffering and will continue to suffer damages as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs MARIA LOBERG and ERICA LOBERG request relief on their own behalf, and on behalf of the estate of Eric Loberg, as follows, and according to proof, against each Defendant:

1.      General and compensatory damages in an amount according to proof;

2.     Special damages in an amount according to proof;

3.     Exemplary and punitive damages against each Defendant, except the COUNTY OF LOS ANGELES, in an amount according to proof;

4.     Costs of suit, including attorneys' fees, under 42 U.S.C. §1988, California Code of Civil Procedure § 1021.5 and any other applicable provision of law; and,

5.     Such other relief as may be warranted or as is just and proper.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED:   August 17, 2016     By: */s/ Ronald O. Kaye*
     RONALD O. KAYE
     Attorneys for Plaintiffs
     Maria and Erica Loberg

## **JURY DEMAND**

Trial by jury of all issues is demanded.

KAYE, McLANE, BEDNARSKI & LITT,   LLP

DATED: August 17, 2016     By*/s/ Ronald O. Kaye*
     RONALD O. KAYE
     Attorneys for Plaintiffs
     Maria and Erica Loberg

36